CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 25 2005

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### HARRISONBURG DIVISION

CAROLYN SWARTZ,                          )
                                         )
    Plaintiff,                          )    Civil Action No.: 5:04cv00037
                                         )
v.                                       )    **MEMORANDUM OPINION**
                                         )
                                         )
RETIREMENT PLAN FOR SALARIED )
EMPLOYEES OF COMBUSTION      )    By: Samuel G. Wilson
ENGINEERING, INC.,           )    United States District Judge
                                         )
    Defendant.                          )

Plaintiff Carolyn Swartz brings this ERISA action pursuant to 29 U.S.C. § 1132(a) against the Retirement Plan for Salaried Employees of Combustion Engineering, Inc. ("the plan"). Carolyn's deceased husband, Richard Swartz, was a plan participant, who, at the time of his retirement, named his then current, now deceased wife, Eva, as his beneficiary. Upon Richard's death, Carolyn filed a claim for benefits but was eventually informed that Eva was the beneficiary of Richard's pension and that the deaths of both Eva and Richard had extinguished benefits. Carolyn claims that she is entitled to pension benefits under the plan or, in the alternative, that she and Richard detrimentally relied on the summary plan description (SPD), which allegedly led them to believe she would receive benefits upon Richard's death. The defendant plan has moved for summary judgment. The court finds itself constrained by the unequivocal plan document and the SPD and cannot arrive at an interpretation of those documents consistent with Carolyn's claim for benefits. Accordingly, the court grants the defendant plan's motion for summary judgment.

**I.**

Carolyn is the widow of Richard Swartz, a deceased participant of the plan.[1] Before his retirement in 1985, Richard was married to Eva Swartz, and he had to elect what benefits, if any, Eva would receive should he pre-decease her. Richard either could allow by default for Eva, as his spouse, to receive a benefit equal to 50% of the monthly benefit received during Richard's life, which the plan termed a Qualified Joint and Survivor Annuity (QJSA), or he could elect for Eva or any other third party[2] to receive a benefit equal to a percentage of his monthly benefit during life, which the plan termed a Joint Retirement Benefit Option (JRBO). Once Richard had elected either the QJSA or the JRBO, the plan administrator would calculate his monthly retirement benefit using actuarial analysis based upon Richard's age, the age of his beneficiary, and the level of benefits ascribed to the beneficiary. The plan document makes clear that changes with regard to a participant's benefit option require the approval of the plan administrator. Further, for the QJSA option, the plan document defines "spouse" as an individual to whom the plan participant is married at the time his pension benefits commence, and, for the JRBO option, the plan document provides that "[i]f the Beneficiary dies . . . the retirement benefit payments to the Retired Member will nevertheless be in the reduced amount and will cease upon the Retired Member's death."

Richard chose the JRBO option, electing Eva as the beneficiary and choosing for her to receive a benefit equal to 100% of the monthly benefit received during Richard's lifetime.

---

[1] Due to a change in ownership, the plan is now officially known as the Asea Brown Boveri Inc. Cash Balance Pension Plan.

[2] However, Richard would have had to have Eva's permission in order to name any individual other than Eva as a beneficiary. See Retirement Equity Act of 1984 (codified at 29 U.S.C. § 1055(c)(2)).

2

However, Eva died in 1992, pre-deceasing Richard. The following year, Richard married Carolyn. At no point, though, did Richard seek the approval of the plan administrator to alter his benefits option to name Carolyn as his new beneficiary.

Richard contacted Fidelity Employer Service Company (Fidelity), the service provider for the plan, seeking assurance that all was in order for Carolyn to receive benefits after his death. Richard specifically asked whether he needed to take any steps to ensure that his wife would continue to receive benefits upon his death. However, at no point during the conversation did Richard refer to his wife as Carolyn, and at no point did he explain that his current wife was not Eva, whom he had specifically designated as his beneficiary. The Fidelity associate assured Richard that all was in order.

Richard died in 2003, and Carolyn contacted Fidelity to give notice of Richard's death and to confirm that she was entitled to benefits. Fidelity informed Carolyn that it would begin the claim process, and the Fidelity associate assured her that he did not "anticipate any problems." Fidelity soon sent Carolyn a letter informing her that "as the named beneficiary, [she was] entitled to survivor benefits under the plan." However, Fidelity later notified Carolyn that she, in fact, was not entitled to survivor benefits because she was not the JRBO beneficiary Richard had expressly elected before retiring.

Carolyn's attorneys then contacted Fidelity and requested copies of Richard's election form, as well as the plan document and SPD in effect at the time of Richard's election.[3] The

---

[3]Fidelity claims that, along with the requested plan documents, it sent a cover letter, explaining to Carolyn that she could appeal to the plan administrator. Carolyn admits that she received the plan document and SPD but claims that she never received the letter. Fidelity claims to have sent a second letter, this time to Carolyn's counsel, explaining that the plan administrator would handle any appeals; Carolyn maintains that neither she nor her counsel received this letter.

3

current suit followed.

Carolyn claims that by informing her that she qualified for benefits and then reversing position, the plan administrator acted arbitrarily and capriciously. Carolyn also alleges a discrepancy between the plan and the SPD in effect at the time of Richard's election. When explaining the 50% QJSA option, the option Richard did not elect, the SPD says, "[i]f you are married, your surviving spouse will automatically get a benefit, after your death, unless you choose otherwise" and "[i]f you are married when you retire, you will receive a somewhat smaller benefit for your lifetime, and after death, one-half of your reduced benefit will be continued to your surviving spouse for his or her lifetime." According to Carolyn, this description is inconsistent with the language in the actual plan document, which more specifically defines spouse as a person to whom the plan participant was married at the time his pension benefits commenced. Carolyn claims that she and Richard detrimentally relied upon the allegedly faulty SPD representations, assuming that Carolyn would qualify for benefits and, therefore, failing to secure sufficient life insurance coverage.[4]

---

Unsigned copies of the two letters were located in Carolyn's file at Fidelity. Carolyn never appealed to the plan administrator.

[4]Carolyn's complaint styled her claim "equitable estoppel." The complaint alleges that "[t]he defendant made several representations to [her] and Mr. Swartz assuring them that the plaintiff would be entitled to receive the survivor benefits" and that "[she] relied on the[] representations and, as a result of [the] reliance, did not obtain additional sources of life insurance to protect [her]." Later pleadings, however, have focused nearly exclusively on the representations made in the SPD and so, too, will the court's analysis. Still, to the extent that Carolyn claims that Fidelity's verbal representations prompted detrimental reliance, the court necessarily rejects the claim.

First and foremost, a plaintiff may not recover on the basis of informal representations of ERISA plan terms. See Gable v. Sweethear Cup Co., 35 F.3d 851, 857 (4th Cir. 1994) ("Were we to hold that other communications could nullify [an] express written term, plan documents would no longer serve to ensure predictability . . . ."); Coleman v. Nationwide Life Ins. Co., 35 F.3d

## II.

The eligibility determination of an ERISA plan administrator is entitled to deference, and the court will disturb his determination only upon a showing that it is arbitrary and capricious or an abuse of discretion. <u>Firestone Tire and Rubber Co. v. Bruch</u>, 489 U.S. 101, 113 (1989). Here, there are no genuine issues of material fact bearing on the plan administrator's decision, and in light of the clear language of the plan, the court finds that the decision to deny benefits to Carolyn was not arbitrary or capricious and was not an abuse of discretion. Thus, the court grants summary judgment against Carolyn.[5]

Carolyn has never claimed, nor could she, that Richard selected a QJSA. Richard elected a beneficiary, Eva, by name, and he set the benefit percentage at 100%. Had he chosen the QJSA option, there would have been no need to elect a beneficiary or choose a benefit percentage because Eva would have been the beneficiary by default, and she would have received a benefit equal to 50% of the monthly benefit Richard received, as opposed to the 100% she was to receive due to Richard's election. Thus, there is no genuine issue as to which option Richard chose; the evidence only supports the conclusion that Richard took the JRBO and named Eva as his beneficiary. The plan document clearly specifies the effects of a JRBO beneficiary pre-deceasing

---

851, 60 n2 (4th Cir. 1992) (holding that such claims are barred whether styled as claims of estoppel or breach of fiduciary duty). Second, even if the representations were actionable, the transcripts of the conversations Richard and Carolyn had with Fidelity reveal that Fidelity's representations were premised on Richard's and Carolyn's incomplete rendition of the facts. Neither Richard nor Carolyn ever informed Fidelity of Eva's passing and of Carolyn's status as Richard's post-retirement wife.

[5]The court assumes, without deciding, that Carolyn took the steps necessary to exhaust her claims as required by <u>Makar v. Health Care Corp.</u>, 872 F.2d 80, 82 (4th cir. 1989), rendering immaterial questions of whether Carolyn actually received the letters from Fidelity informing her of her appeal options and of whether those letters provided sufficient notice under ERISA.

the plan participant, as Eva did: the plan participant continues to receive benefits until his death, at which point benefits terminate. Carolyn has never claimed that Richard sought the administrator's permission to formally elect her as a substitute for Eva, and the plan administrator simply disallowed Carolyn to stand in Eva's place. That decision comported with the dictates of the plan. Further, the plan administrator did not act arbitrarily and capriciously or abuse his discretion when he informed Carolyn that she would receive benefits and then changed his position. The decision to ultimately deny benefits complied with the plan, and nothing about the administrator's initially misinforming Carolyn changes that.[6]

## III.

When the language of a SPD conflicts with the language in the plan document and a plan participant has relied upon or been prejudiced by the representations in the SPD, the language of the SPD controls. Stiltner v. Beretta U.S.A. Corp., 74 F.3d 1473 (4th Cir. 1996); Aiken v. Policy Management Systems Corp., 13 F.3d 138 (4th Cir. 1993); Pierce v. Security Trust Life Ins. Co., 979 F.2d 23 (4th Cir. 1992). However, no reasonable trier of fact could find a discrepancy between the relevant language in the SPD in question and the language of the plan document, so the court grants summary judgment against Carolyn.

Carolyn devotes the entirety of her argument to the SPD's discussion of the QJSA option, claiming that the SPD fails to adequately convey the requirement that a "spouse" be married to the plan participant at the time of retirement in order to benefit from the QJSA. The SPD's discussion of the QJSA is irrelevant to the inquiry before this court, though. Again, there is no

---

[6]Further, Carolyn has not alleged any detrimental reliance on or prejudice stemming from Fidelity's erroneous notice.

genuine issue of fact as to the option Richard elected: he chose the JRBO. Thus, only the portion of the SPD touching on the JRBO is relevant. When explaining the JRBO, the plan document goes into greater detail and specifically outlines the consequences of the beneficiary pre-deceasing the plan participant, but the language of the SPD in no way contradicts the representations made in the plan document. Moreover, the SPD's description of the JRBO in no way suggests that a new spouse automatically becomes a beneficiary if the participant had named his previous, deceased spouse his JRBO beneficiary. Thus, the court finds no conflict between the descriptions of the JRBO found in the SPD and the plan document, much less a conflict capable of supporting Carolyn's claim that she became the beneficiary of Richard's JRBO upon their marriage.

## IV.

Finally, Carolyn has requested attorneys' fees and costs. Having granted summary judgment against Carolyn on each of her claims, the court denies Carolyn's request.

## V.

The court has before it the case of an unfortunate unilateral mistake. Carolyn and Richard erroneously concluded that, by virtue of marriage, Carolyn automatically replaced Eva as Richard's beneficiary. However, Richard elected the JRBO with Eva as his beneficiary, and that decision directly and profoundly affected the amount of Richard's monthly benefit from day one, rendering the election difficult, if not impossible, to alter. In refusing to allow Carolyn to stand in Eva's place, the plan administrator did not act arbitrarily and capriciously; rather, he acted in a manner consistent with the system of actuarial analysis essential to retirement plans like the one here. Thus, the court grants summary judgment to the defendants.

ENTER: This _25th_ day of May, 2005.

_____
UNITED STATES DISTRICT JUDGE

8